29 C.C.P.A.(Patents)

**PETTY v. GILES (three cases).**

**Patent Appeals Nos. 4541–4543.**

Court of Customs and Patent Appeals.
Feb. 2, 1942.

Thomas E. Scofield, of Kansas City, Mo., for appellant.

Donald E. Payne, of Chicago, Ill. (Edward B. Beale, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

. These three appeals are from decisions of the Board of Appeals of the United States Patent Office in which priority of invention was awarded to Roy N. Giles in three interferences involving, generally, the separation of wax from lubricating oil by the use of normally gaseous hydrocarbon diluents such as propane and butane. The three appeals are presented to us in a single record and we will dispose of the issues raised thereby in a single opinion.

There are three counts involved, one in each interference. They follow:

Interference No. 68,617. "The process of separating hydrocarbon lubricating oil and wax occurring naturally therewith which comprises *heating said oil-wax mixture with a normally gaseous, hydrocarbon refrigerant to an elevated temperature sufficient to effect complete solution of both wax and oil,* effecting the major portion of the refrigeration necessary to precipitate the wax by evaporation of a portion of the hydrocarbon refrigerant thereby precipitating said wax, separating said precipitated wax, and recovering dewaxed lubricating oil from the remaining mixture." [Italics ours]

Interference No. 68,846. "The process of separating wax from oil which comprises mixing with an oil-wax mixture a liquefied normally gaseous hydrocarbon, *maintaining the mixture at elevated temperature and at an elevated pressure sufficient to effect complete solution of both wax and oil in the liquefied hydrocarbon,* cooling the mixture to effect solidification of wax in separable form from the solution of oil in liquefied normally gaseous hydrocarbon, retaining at least a portion of the liquefied normally gaseous hydrocarbon in the oil to serve as a diluent therefor, and separating the solidified wax from the diluted oil." [Italics ours]

Interference No. 73,160. "The method of removing wax from a wax-bearing oil which comprises *heating said wax-bearing oil with a normally gaseous hydrocarbon to an elevated temperature sufficient to effect complete solution of both oil and wax therein,* refrigerating the solution to cause crystallization of the wax from the diluted oil in filterable form, mechanically separating said wax from said diluted oil, and separating the remaining diluent from the diluted oil." [Italics ours]

As may be seen from a reading of the above-quoted counts, the process involved relates to the separation of wax from oil by mixing a normally gaseous hydrocarbon

diluent (such as propane or butane) with the oil, heating the mixture or maintaining it at an initial high temperature, cooling the mixture and separating the wax from the oil. We have italicized in said counts certain limitations which were of importance below, but not here, since it is not contended by anyone that there is sufficient difference in the inventions defined by the three counts to permit of a split decision, that is to say, upon the instant record one or other of the involved litigants are entitled to all the counts.

Earl Petty, the appellant, is the senior party having filed his application, serial No. 557,826, on August 18, 1931. Roy N. Giles is the junior party, having filed his application, serial No. 560,361, on August 31, 1931. The application of Giles matured into patent No. 1,943,236 on January 9, 1934.

Petty copied claims 10, 14, and 15 (corresponding to the three counts here involved) of the Giles patent for purposes of interference and the three interferences, involved in these appeals were declared.

Both parties took testimony at some length.

It may here be said that during the prosecution of these interferences in the Patent Office other parties were involved in two of them, but have now been eliminated so that Giles and Petty are the only parties concerned.

The Examiner of Interferences and the Board of Appeals wrote separate opinions in all three interferences but stated in full the reasons for their holdings in their opinions in interference number 73,160.

The Examiner of Interferences reviewed the record for Giles and held that he failed to establish any inventive acts prior to his filing date, August 31, 1931. The Examiner of Interferences considered Petty's record but also restricted him to his filing date, August 18, 1931, and therefore awarded priority of invention to him.

Upon appeal, the Board of Appeals agreed with the Examiner of Interferences that Petty "had not carried his date of invention back of his record date and that he must be restricted thereto for inventive acts." It disagreed with the examiner, however, as to the Giles proof and concluded that " * * * Giles has proved by a preponderance of evidence that he conceived the invention prior to the filing date of Petty, August 18, 1931," and was diligent "during the critical period."

We have carefully examined Petty's proof which consists of the testimony of himself and nine other witnesses, and drawings, notebooks, and other documentary evidence, and agree with the concurring views of the tribunals below that Petty has proved no date of invention earlier than his filing date, except in the particular to which we shall hereinafter refer.

In view of the board's conclusion that Giles had proved by a preponderance of the evidence that he had a conception of the invention prior to Petty's filing date, which conclusion resulted in awarding priority to Giles, it is necessary for us to briefly set out a few of the important elements of Giles' proof.

Early in 1931 Giles was engaged in research for the Standard Oil Company of Indiana at its Casper, Wyoming, laboratory. He was working on the problem of dewaxing oils. Many exhibits and notebook entries were introduced in evidence which need not be discussed here. It is sufficient to say that the tribunals below have not held that any of the documentary proof of itself established either conception or reduction to practice of the invention involved. The record, however, shows that S. H. Diggs, Giles' immediate superior, forwarded to Dr. R. E. Wilson, Director of Research for the company, who had offices at Chicago, Illinois, what are now known as Giles' exhibits D to H, which were reports relating to Giles' experiments. Wilson did not testify and no excuse is offered for his failure to do so. The record, however, by way of stipulation, discloses that the said Giles' exhibits D to H were sent by Dr. Wilson to Donald E. Payne, a patent attorney for the Standard Oil Company of Indiana; that he read the reports shortly after they were received by Dr. Wilson and proceeded to prepare the application for the Giles patent, and that Giles signed the application on the 18th day of August 1931, the filing date of Petty.

The board held that Giles had established that he had a conception of the involved invention prior to the filing date of Petty and that on August 18 Giles was diligent when he signed his application. Evidently the board regarded August 18 as the date when Petty entered the field. By this process of reasoning the board arrived at the conclusion that priority should be awarded to Giles. We quote the following from the decision of the Board of Appeals:

"It appears to us that Giles is not dependent entirely on Wilson for proof that the reports, Exhibits D to H, were received by him. It is noted that Donald E. Payne, a patent attorney, stated that he read the formal reports, Giles Exhibits D to H, shortly after they were received by Dr. Wilson and prepared and filed Giles' application, Serial No. 560,361, which resulted in the patent No. 1,943,236, involved in this interference. Payne's testimony indicates that Dr. Wilson must have received these reports before Payne prepared and filed Giles' application on August 31, 1931.

"In his brief on reconsideration, Giles points out that the papers in his file wrapper show that his application and oath were signed in Casper, Wyoming on August 18, 1931, the date on which Petty's application was filed. This indicates that Payne prepared the application of Giles after he read these reports, Exhibits D to H, and sent the application to Casper, Wyo., where Giles signed it and executed the oath on the day Petty filed, showing diligence at or before the time Petty entered the field. Since this application was forwarded from Casper, Wyo. and filed in the Patent Office within thirteen days after its signing, it is considered that Giles was diligent during the critical period. Taking all of the circumstances together, it is believed Giles has proved by a preponderance of evidence that he conceived the invention prior to the filing date of Petty, August 18, 1931."

The record shows that Petty signed his application on August 13, 1931. The board apparently gave no consideration to this fact, although it concluded that the date when Giles signed his application was important.

■ Giles has contended vigorously, until the time of argument in this court, that Petty could not make the counts by reason of lack of disclosure. In this court Giles waives the question of the right of Petty to make the counts and he also concedes that if he has not proved conception prior to the 13th of August 1931, he is not entitled to an award of priority. We, therefore, must assume that when Petty signed his application on August 13, he, at some time, either on August 13 or prior thereto, had a conception of the involved invention. Otherwise, the invention would be that of his patent attorney and not his. His diligence is not questioned. It must necessarily follow that Giles, to win, must affirmatively show a conception and a reduc-

tion to practice prior to August 13, 1931, or show a conception prior to August 13, 1931, and diligence from immediately prior to that date to the filing of his application.

While Petty denies that the record shows that Giles had any conception of the invention prior to his filing date, it is not convincingly urged that the progress reports, Giles exhibits D to H, inclusive, do not disclose the invention at bar. The Examiner of Interferences held that the documentary evidence had not been sufficiently proved as to time and, therefore, did not establish conception by Giles prior to his filing date. The board held that the Giles proof did not show a reduction to practice prior to the filing of his application. Under the circumstances, we think that the holding of the Examiner of Interferences that the documentary evidence did not establish conception by Giles was based upon the conclusion that the dates of such reports had not been sufficiently established.

We have examined the documentary exhibits with a view of determining whether or not they disclose the invention at bar and are of the opinion that they do. Certainly this fact has not been convincingly traversed by anyone in the case.

The dates appearing on Giles exhibits D to H, inclusive, and J are as follows:

D—February 3, 1931

E—March 16, 1931

F—May 16, 1931

G—June 13, 1931

H—July 8, 1931

J—August 4, 1931

If these dates are proved, it must be found that Giles had a conception of the invention prior to any date which Petty can be awarded on the instant record.

By stipulation, the testimony of Sterling H. Diggs, a chemist in the employ of the Standard Oil Company and stationed at Casper, Wyoming, was placed in the record and the material portion of it is as follows:

"Also, Giles' work in the first half of 1931 was done in our Research Laboratory in a room adjacent my office and I witnessed the major part of it personally. I know Dr. Giles' handwriting and I identify Giles Exhibit 'B' as his notebook in which he made original entries. I identify Giles Exhibit 'C' as true copies of the Weekly Reports which were submitted to me by Giles throughout the progress of this work. I

identify Giles Exhibits 'D' to 'H' as progress reports which were prepared by Dr. Giles under my supervision and which were mailed by me personally to Dr. R. E. Wilson *on or about the dates indicated.* I personally wrote the letter marked Giles Exhibit 'I' on the date indicated. I recognize the blue print marked Giles Exhibit 'J' as the drawing which he prepared in his own handwriting *on or about the date indicated.* [Italics ours]

"I checked Dr. Giles' results carefully before submitting the formal Progress Reports. These Progress Reports truly reflect his work. I identify sheet 3 of Exhibit 'K' as a photostat of one of Giles' original notebooks and recognize the handwriting as that of Roy N. Giles."

It will be noticed that Diggs stated that the reports "D" to "H" (which disclosed the invention) were prepared by Dr. Giles under Diggs' supervision and were by Diggs mailed to Dr. Wilson on or about the dates indicated, and that the blueprint, Giles Exhibit "J", which is a drawing of the apparatus for carrying out the process, was prepared in Giles' own handwriting on or about the date indicated. It would seem to be the view of the Examiner of Interferences that "on or about the date indicated" on the reports was not sufficiently definite to fix the time so as to entitle Giles to this date for conception. The board, as we understand its decision, holds that Giles was not dependent upon Wilson for proof that the reports "D" to "H" were received by him and calls attention to the fact that the patent attorney, Donald E. Payne, stated that he had read the formal reports, Giles exhibits "D" to "H" shortly after they were received by Wilson and prepared and filed Giles' application, and that this proves that Wilson received the reports before Payne prepared and filed the application on August 31, 1931. The board, therefore, does not discuss or make any holding with reference to the lack of definite proof as to the dates of the exhibits in controversy.

We think the dates of Exhibits "D" to "H" and "J" are sufficiently established by the circumstances related by the board, together with the positive testimony of Diggs that he mailed to Dr. Wilson, Dr. Giles' reports "on or about the dates indicated," the latter phrase we interpret to mean "on or about the dates indicated on the documents." Payne, the patent lawyer, stated that he read the formal reports, Giles

exhibits "D" to "H" "shortly after they were received by Dr. R. E. Wilson and prepared and filed the Giles application."

The term "on or about" is, in Black's Law Dictionary, 3rd Edition, defined as follows: "On or About. A phrase used in reciting the date of an occurrence or conveyance, or the location of it to escape the necessity of being bound by the statement of an exact date, or place; approximately; about; without substantial variance from; near. * * "

"On or about" the dates indicated on the documents would, under any reasonable interpretation of the term, identify the date of mailing the reports at some time prior to any date to which appellant is entitled. Unquestionably, there was no lack of diligence on the part of Giles during the critical period.

We, therefore, hold that the junior party, Giles, has proved that he was the prior inventor of the subject matter of the counts at bar and that the decision of the Board of Appeals, in awarding priority to the party Giles in each of the three interferences here involved, should be and the same is affirmed.

Affirmed.